[No. 967.]

# THE STATE OF NEVADA, RESPONDENT, *v.* ROBERT FRAZER, APPELLANT.

CRIMINAL LAW—HOMICIDE—JUSTIFICATION.—Where there is any testimony to support the plea of justifiable homicide, the court has no right to withdraw that question from the jury. A refusal to instruct the jury thereon: *Held,* erroneous.

IDEM—REMARKS OF COURT.—The court, before charging the jury, said to prisoner's counsel: "That the theory of the defense was based upon the

proposition that the defendant, at the time, was laboring under an aberration of mind, and therefore not responsible; that this was clearly disproven by the statement of the defendant himself," etc.: *Held*, improper.

APPEAL, from the District Court of the Sixth Judicial District, Lincoln County.

The facts are stated in the opinion.

*F. M. Huffaker*, for Appellant.

I. The instructions given by the court were erroneous. (*State* v. *Duffy*, 6 Nev. 139.)

II. The oral remarks of the court in the presence of the jury were improper. They amounted to an instruction upon the facts, and were in violation of sec. 12, art. 6 of the state constitution. (*People* v. *Bonds*, 1 Nev. 35; *State* v. *Harkin*, 7 Nev. 381; *People* v. *Ah Fong*, 12 Cal. 347.)

*A. B. & W. J. O'Dougherty*, and *Stone & Hiles*, also for Appellant.

*M. A. Murphy*, Attorney-General, for Respondent,

By the Court, LEONARD, J.:

Appellant was indicted for the crime of murder, and convicted of manslaughter. He was sworn as a witness in his own behalf, and testified as follows:

"On the day of the trial with the Floral Springs Water Company, Mr. Donahue (the deceased) gave in false testimony against my wife, and slandered her in court. After going home she took it very bad to heart, and seemed to be very sick. I told her 'not to mind that; the first time I saw Donahue that I would speak to him.' Having occasion to go down town, she asked how long it would be before I would be back. I told her perhaps twenty minutes or a half hour. * * * I went down town. I saw Mr. Newton sitting on a dry goods box in front of Alexander's. I sat down beside him. We got into conversation. * * * I looked up and saw Mr. Donahue coming down the west side of Main street. I walked across the street, and just

as Donahue got to the south door of Schusterich's saloon, I told him I would like to speak to him. Instead of his coming direct to me he kept on the sidewalk, shoved his hand into his pocket and came around the horses' heads of the team that was standing there in front of Matt. Schusterich's saloon. Says he: 'What do you want?' I asked him 'if he thought it was right to swear false in the court-house and slander a woman;' and I think I said 'making her a laughing-stock through the town.' Says he: 'Do you believe it?' Says I: 'You take time till I tell you the tale out.' Says he: 'Do you believe it?' I said that 'I knew it.' And with the implement that he had in his hand he struck me at that very instant. I could not see, but the head of it seemed to me to be a chisel, or some implement of the kind. I could not positively swear to the shape of it, or whether it was steel or iron; but the very instant he struck at me he said I was a —— liar. Whether there was anything more said I could not tell, for I thought I had got my death blow right there. I staggered back some eight or ten feet. * * * Think I was down on one knee; would not be positive as to being down on both. The blood was streaming over my face, and as I raised to my feet I saw Donahue in the attitude, as I thought, of coming towards me again. I then drew the pistol, and as I fetched the pistol down he turned with his right side towards me just as I fired at him. At this instant he threw his right hand to his right hip, and the team started off. * * * The next I saw of him I think was on Lacour street, and I fired again. They say I fired four shots, but I could not remember. The reason I could not remember, I presume, was owing to the excitement and the blow together. I followed the man; could not tell how far, and I stopped. Seemed to be a good many men to rustle around me. They asked me if I was shot. I told them I did not think I was shot. I thought that my skull was driven in."

Dr. Lee testified that appellant was wounded over the left eye, the wound having been nearly an inch in length. The skin and flesh were cut through to the bone. The skull was

slightly fractured. The fracture was nearly the length of the flesh wound. There was quite an effusion of blood. The effects of the blow and wound were considerable physical prostration and nervous excitement.

It seems from the testimony that four shots were fired; but it was claimed by counsel for appellant that death was caused by the first, and there was testimony tending to show that such was the fact.

There was considerable testimony to the effect that the blow staggered appellant, and that blood flowed profusely from the wound. Witness Hannon testified that Donahue was in a fighting attitude after he had struck appellant, holding his right hand, as stated by the witness, on his right pistol pocket.

With the above testimony before the court and jury, in connection with the plea of "not guilty," it was plainly the duty of the court to submit to the jury, under proper instructions, the question of justification. This the court refused to do, but instructed them as follows: "The defendant, by his own testimony, confesses his guilt under the law. All that you have to do is to determine whether that guilt, under all the facts as testified to, amounts to either murder in the first degree, murder in the second degree, or manslaughter. You have nothing to do with the question as to whether he is innocent or guilty, for you are hereby charged that he has confessed his guilt in one or the other degrees of murder or manslaughter. The only question left open to you is to determine whether the defendant is guilty of manslaughter, or of murder in the second or first degree."

There was some testimony, at least, to support appellants' claim of justifiable homicide, and the withdrawing of that question from the jury and the refusal to instruct them thereon were errors.

It was error also to refuse instructions upon reasonable doubt and the legal presumption of innocence until proof of guilt.

Immediately before charging the jury, addressing itself to defendant's counsel in explanation of its reasons for re-

fusing to give certain instructions asked, the court stated orally in the presence of the jury, "That the theory of the defense was based upon the proposition that the defendant, at the time, was laboring under an aberration of mind, and therefore not responsible; that this was clearly disproven by the statement of the defendant himself; that the statement of the defendant showed that he had as clear a recollection of everything that transpired as any other person present; that he had stated distinctly the position of himself and deceased at the time of the firing of the first shot; he had recollection of the deceased passing around the team; crowded deceased against the hydrant, and that he showed a clear recollection of every transaction that transpired up to the fourth shot."

Counsel for the defendant then stated to the court that "the defendant did not claim that he was at all unconscious, or did not have his full faculties throughout the transaction." And the court replied that "if the defendant made no such claim, defendant's own testimony, under the law, amounted to manslaughter, at least, and that he would so instruct the jury."

We had occasion recently to remark upon the impropriety of such or any comments by the trial court in a criminal case (*State* v. *Tickle*). That the court's first remarks were improper there can be no doubt. They were not called for, and were in effect an oral charge to the jury. Their tendency was, also, to convey to the minds of the jury the idea that appellant's only defense was that he was unconscious at the time of the fatal shot, which, as we have seen, was not the case. To what extent the remarks of appellant's counsel in reply removed the effect of the court's error we shall not stop to inquire, because there was error, and presumably injury, at least. The last remarks of the court to appellant's counsel have nothing to relieve them of their natural effect. They were oral; they withdrew from the jury's consideration appellant's claim of justification, and substituted the court's conclusions in place of the jury's, under proper instructions.

The case was tried upon a false theory from beginning to end, and the result is that a new trial must be had.

The judgment and order overruling appellant's motion for a new trial are reversed, and the cause remanded. Remittitur forthwith.